## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**RACHEL, C**[1]

        **Plaintiff,**

**v.**                                 **Case No. 4:22-cv-101**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff Rachel C. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff cites two errors.  Plaintiff argues the ALJ erred because he did not include limits on pace in his Residual Functional Capacity ("RFC") assessment despite finding "moderate" impairments in concentration, persistence, and pace, and he did not explain why the RFC excluded pace limitations.  Plaintiff also contends that the ALJ improperly relied upon a lack of objective evidence to discredit Plaintiff's symptoms and functional limitations.  This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.  This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the Court affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

## I.    PROCEDURAL BACKGROUND

On November 16, 2020, Plaintiff initially filed for DIB.  (R. 15).  Plaintiff alleged disability beginning May 26, 2019, based on depression and generalized anxiety disorder.  (R. 204).[2]  The state agency denied her application initially and on reconsideration.  (R. 15). Plaintiff then requested an administrative hearing.  (R. 103).  The hearing was held on January 11, 2022, before Administrative Law Judge ("ALJ") Jarrod Tranguch.  (R. 33).  Counsel represented Plaintiff at the hearing, and a vocational expert ("VE") testified.  Id.

On January 31, 2022, the ALJ denied Plaintiff's claim for DIB, finding she was not disabled during the period alleged.  (R. 27).  The ALJ found Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18).  The ALJ concluded Plaintiff could perform work within the national economy, and was not disabled.  (R. 26).  On September 8, 2022, the Appeals Council denied Plaintiff's request for review.  (R. 1–3).

On October 3, 2022, Plaintiff filed her Complaint in this court.  Compl. (ECF No. 1). Plaintiff argues that "the denial of her disability claim is not supported by substantial evidence under the standards set forth by 42 U.S.C. § 405(g) and all other laws and regulations," and thus "the denial of her claim should be reversed or remanded for further administrative proceedings." Id. at ¶ 6.  In her brief supporting her requests, Plaintiff contends that the ALJ erred in two respects.  First, Plaintiff argues the ALJ committed reversible legal error by failing to include limits on pace in the RFC assessment and neglecting to explain why such limits were excluded. Pl.'s Br. Supp. Summ. J. ("Pl.'s Br.") (ECF No. 14, at 6).  Plaintiff also argues the ALJ erred by relying "upon a lack of objective evidence" to discredit Plaintiff's subjective complaints and

---

[2] In the ALJ's decision, he found Plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder (GAD), major depressive disorder (MDD), personality disorder, and alcohol use disorder (20 CFR 404.1520(c)).  (R. 18).

functional limitations. Id. at 9–10. The Commissioner opposed Plaintiff's motion and asked the Court to affirm ALJ's decision. [3] Def.'s Br. in Opp'n ("Def.'s Br.") (ECF No. 15). The Commissioner argues that the ALJ sufficiently explained and accounted for Plaintiff's mental limitations in the RFC assessment, the ALJ properly reviewed the relevant evidence, and substantial evidence supports his decision. Id. at 13–23. Plaintiff did not reply. After a review of the record, this Report recommends that the Court affirm the final decision of the Commissioner.

## II.   FACTUAL BACKGROUND

Plaintiff was born on May 25, 1988, and at the time of the ALJ's decision, she was 33 years old, which is defined as a younger individual (18-49) under SSA rules. (R. 26, 41).[4] She has not engaged in substantial gainful activity since May 26, 2019, the alleged onset date. (R. 43). Plaintiff met the insured status requirements under the Act through June 30, 2022. (R. 16). She has a GED and testified before the ALJ that she is enrolled in part-time classes and working towards her associate degree. (R. 43). Plaintiff reported past relevant work involving "15 or so" different job titles, including waitress, cook, and veterinary assistant. (R. 44–46).

### A.   Plaintiff's Health Treatment

Plaintiff's arguments before the Court do not require a complete review of her medical history as she disputes only the ALJ's assessment of her mental health limitations bearing on her

---

[3] In opposing Plaintiff's motion, the Commissioner did not move for summary judgment. However, under the new Supplemental Rules for Social Security Actions, effective December 1, 2022, appeals from final decisions of the Social Security Administration are presented for decision by the parties' briefs. Supp. R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5. As both parties have filed their briefs on this matter pursuant to the undersigned's Briefing Order, (ECF No. 12), this matter is ripe for review notwithstanding the absence of cross-motions for summary judgment. To the extent the Commissioner's brief, (ECF No. 15), seeks summary judgment in the Commissioner's favor, this Report, recommends that the court GRANT the motion.

[4] 20 C.F.R. § 404.1563(c) states: "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." But the ALJ "will not apply the age categories mechanically in a borderline situation," if for example the claimant is "within a few days to a few months of reaching an older age category." 20 C.F.R. § 404.1563(a).

ability to perform at a consistent pace, and the ALJ's alleged reliance upon a purported lack of objective evidence to discredit evidence of her symptoms and functional limitations.  Pl.'s Br. (ECF No. 14, at 6–9)

     **1.**    **Treating Providers**

     On May 10, 2019, sixteen days before her alleged onset date, Plaintiff voluntarily admitted herself to inpatient care at The Pavilion Foundation in Illinois for suicide and self-harm precautions.  (R. 285).  At that time, Plaintiff was living in Illinois.  See (R. 365).  Plaintiff was "admitted for worsening symptoms of depression and suicidal ideations with 2 attempts in the past week."  (R. 285).  Plaintiff reported that she recently relocated and separated from her husband, which were "major stressors."  Id.  Plaintiff noted she has a long psychiatric history including self-injurious behavior as a teenager.  Id.  Plaintiff denied auditory of visual hallucinations, racing thoughts, or paranoid delusions.  Id.  She reported "insomnia, constant anxiety, increased depression and suicidality."  Id.  She noted "hypersexual behavior during periods of decreased need for sleep and endorses longest time without sleep was 2 days."  Id.  Her current prescriptions included Lexapro, Wellbutrin XL, and Xanax.  Id.  Plaintiff's labs were positive for benzodiazepines, and she was provided with additional medications during her stay.  Id.

     At The Pavilion Foundation, Plaintiff "attended groups and had appropriate peer interactions."  Id.  She "received individual case management and worked on [a] treatment plan, goals of SI [suicidal ideation] resolution, relapse prevention and psychoeducation."  Id.  She reported "satisfaction with all aspects of treatment," and was discharged in a stable state on May 15, 2019.  Id.  For follow up care, Plaintiff scheduled a psychiatry appointment with Dr. Lo on June 3, 2019, and an individual therapy appointment with James Hamilton at Frances Nelson on

June 6, 2019. (R. 286). Plaintiff also scheduled a follow-up appointment with her primary care provider, Jiayi Tao, PA at Frances Nelson on May 22, 2019.[5] Id.

On September 10, 2019, after moving from Illinois to Virginia, Plaintiff began outpatient psychiatric treatment and counseling with Jennifer Cooke, Physician Assistant ("PA-C"), at Pegasus Psychiatric and Wellness Center (which is also called "Psychiatric Consultants Hampton Road" in the record). (R. 367). Plaintiff indicated that she stopped drinking and was taking her old medications because she did not like that her medications changed. Id. Plaintiff denied depression and suicidal ideations. Id. She stated she was "doing better" and attending group therapy. Id. PA-C Cooke noted Plaintiff's affect/mood was normal, her focus was good, she observed no difficulties with her energy level, sleep, or appetite, her memory was intact, her thought process was clear, her speech pattern was normal, her cognition was normal, she denied psychosis, and she denied suicidal thoughts. Id.

On November 20, 2019, Plaintiff was seen again by PA-C Cooke. (R. 366). According to the subjective treatment notes, Plaintiff indicated she always has "some depression," and was experiencing "ups and downs." Id. PA-C Cooke's objective treatment notes included that Plaintiff's affect/mood was normal, she had good focus, she had no difficulties with her energy level, sleep, or appetite, her memory was intact, her thought process was clear, her speech pattern was normal, her cognition was normal, she denied psychosis, and she denied suicidal thoughts. Id.

On January 8, 2020, Plaintiff was seen by Kelly Carpenter, M.D., at the Pegasus Psychiatric and Wellness Center. (R. 365). During the appointment, Plaintiff explained that she voluntarily committed herself in Illinois after attempting suicide by overdose. Id. Plaintiff

---

[5] The Administrative Record before the Court does not include treatment records from Dr. Lo, Dr. Hamilton, or Dr. Tao. See generally (R. 1–524).

explained that she was living in Illinois due to marriage conflicts in Virginia, and her mother and sister lived in Illinois, but "she was using alcohol as a coping skill and it ended up being an unhealthy environment after she had sexual intercourse with her sister's husband so she returned here to VA." Id. Plaintiff reported that she stopped drinking for six months but is currently drinking approximately three days a week, three to ten shots of Tequila. Id. Plaintiff noted alcohol is a concern in her life, but Dr. Carpenter found she "does not appear to be fully ready to stop drinking." Id. Dr. Carpenter discussed treatment options with Plaintiff, including individual and group therapy. Id. Dr. Carpenter also questioned Plaintiff "about her medications since she is currently prescribed a medication that she overdosed on." Id. Plaintiff stated her doctor was not aware of her overdose or drinking habits. Id. Plaintiff agreed to speak with her provider and share that information. Id. The treatment notes included that Plaintiff's mood was normal, she was moderately focused, she had no difficulties with her energy level, sleep, or appetite, her memory was intact, her thought process was clear, her speech pattern was normal, she denied psychosis, and she denied suicidal ideations. Id. Dr. Carpenter referred Plaintiff to Meridian Psychotherapy for treatment. Id.

On February 12, 2020, Plaintiff had an appointment with PA-C Cooke. (R. 364). Plaintiff shared that she was "doing better with [the] Wellbutrin increase," and stopped drinking the past month. Id. The objective treatment notes included that Plaintiff's affect and mood were normal, she had good focus, she presented no difficulties with her energy level, sleep, or appetite, her memory was intact, her thought process was clear, her speech pattern was normal, her cognition was normal, she denied psychosis, and she was not suicidal. Id. Plaintiff noted she was attending group therapy at Meridian and individual therapy. Id.

On February 19, 2020, Plaintiff had an appointment at Hidenwood Family Medicine with Amudha Palani, M.D.  (R. 373).  Dr. Palani conducted a physical examination and concluded Plaintiff was oriented to time, place, person and situation, and she had an appropriate mood and affect.  (R. 376).  Dr. Palani noted her present illnesses as back pain and acne.  (R. 373).

The following year, on April 20, 2021, Plaintiff has an appointment with PA-C Cooke at Seaside Behavioral Health.[6]  (R. 520).  Plaintiff reported she was doing well and "has a new kitten."  Id.  She denied drinking, and indicated she is managing her anxiety and her medications are working well.  Id.  A few months later, on July 6, 2021, Plaintiff was treated by PA-C Cooke and again reported she was doing well, her mood was "good," she denied drinking alcohol, and she shared that she was finishing her "xray tech degree." (519).  Plaintiff's mood was bright, she denied suicidal ideation, her attention was normal, her memory was intact, her impulse control was good, and she was oriented to person, place, time, and situation.  Id.

On September 13, 2021, Plaintiff had a physical at Hidenwood Family Medicine with Dr. Palani.  (R. 491).  The treatment report listed Plaintiff's illness history, including EOV [exercise oscillatory ventilation], depression, and knee pain.  (R. 492).  The record also noted Plaintiff has ADHD.  Id.  Considering her depression, Dr. Palani found "[t]here is improvement of initial symptoms," and Plaintiff reported "functioning as not difficult at all."  Id.  Plaintiff did "not present with anxious/fearful thoughts, compulsive thoughts, decreased need for sleep, depressed mood, difficulty concentrating, difficulty falling asleep, difficulty staying asleep, diminished interest or pleasure, easily startled, excessive worry or fatigue."  Id.  Plaintiff was oriented to time, place, person, and situation.  (R. 495). She had an appropriate mood and affect, normal insight, and normal judgment.  Id.  On September 22, 2021, Plaintiff met with PA-C Cooke, and again reported she was "doing well mentally" and not drinking alcohol.  (R. 518).

---

[6] PA-C Cooke moved from Pegasus Psychiatric and Wellness Center to Seaside Behavioral Health.  (R. 40).

On October 11, 2021, Plaintiff had an annual physical examination at Bayview Physicians Group. (R. 483). On examination, Plaintiff was alert and oriented, her sensory exam was intact, her motor strength was normal for both upper and lower extremities, and her cranial nerves 2-12 were grossly intact. (R. 484). The next week, on October 19, 2021, Plaintiff had an appointment for cold symptoms at Hidenwood Family Medicine with Dr. Palani. (R. 485–89). Plaintiff reported a history of alcohol use and stated she drinks five cups of coffee a day. (R. 486). Dr. Palani found Plaintiff was oriented to time, place, person, and situation, and she had appropriate mood and affect. (R. 488).

On October 26, 2021, Plaintiff went to the Ambulatory Care Clinic Family Practice in ACC FP for medication management. (R. 504). Plaintiff was treated by Jessica L. Quirk, M.D. (R. 506). Plaintiff reported ADD, depression, elevated liver enzymes, and hyperglycemia. (R. 504). Her diagnosis, among other things, included excessive daytime sleepiness, class 1 obesity, ADD without hyperactivity, anxiety, and recurrent major depressive disorder, in remission. (R. 505).

Lastly, on December 16, 2021, Plaintiff attended a telehealth appointment with PA-C Cooke. (R. 516). Plaintiff reported that the Wellbutrin "made things worse," and she had increased stress and depression. Id. Plaintiff stated she "needs to talk with a therapist," and reported fatigue. Id. PA-C Cooke's objective assessment included that Plaintiff was calm, cooperative, her speech was normal, her mood was bright, her thought content was logical, she was oriented to person, place, time, and situation, she was distractible, her memory was intact, her insight was good, her impulse control was good, and she denied suicidal ideations. Id.

PA-C Cooke provided two medical source statements for Plaintiff. (R. 424, 515). Both assessments were completed on a checkbox form that included questions related to Plaintiff's

mental health and ability to perform work-related activities. The first medical source statement was completed on November 5, 2020. (R. 424). PA-C Cooke included Plaintiff diagnoses as Dysthymia, ADHD, and alcohol abuse in remission. (R. 424). She noted Plaintiff has the following symptoms: appetite disturbance, sleep disturbance, blunt, flat or inappropriate affect, feelings of guilt/worthlessness, disturbed mood, mood swings, decreased energy, difficulty with focus/concentration, isolation/emotional withdrawal, persistent anxiety, anxiety attacks, racing thoughts, and impairment of impulse control. Id. PA-C Cooke checked boxes indicating Plaintiff has marked limitations in her ability to carry out short/simple instructions, maintain concentration and focus, get along with the general public, co-workers, and supervisors, perform at a consistent pace, respond to changes in routine, and deal with normal work stress. (R. 424). PA-C Cooke included "marked" limitations for all work-related activities included on the checkbox form. Id. PA-C Cooke included that if Plaintiff was hired to work a full-time job (40 hours/week), she would be absent from work two days per month due to her mental health problems. Id. The form reflecting PA-C Cooke's mental assessment did not include references to supporting evidence, and she did not provide any narrative explanation on the source statement to support her conclusions. Id.[7]

On December 16, 2021, PA-C Cooke completed a second medical source assessment for Plaintiff. (R. 515). This second checkbox assessment is identical to PA Cooke's first assessment, both in terms of the limitations described and the absence of a supporting narrative. Compare (R. 424); with (R. 515).

---

[7] The provided form had space for individual assessment at five levels of impairment in eight different work-related activities. (R. 424). PA-C Cooke drew a straight line down the column for "marked" impairment. Id.

## 2.    State Agency Consultative Examiners

### a.    Howard Leizer, Ph.D.

On February 23, 2021, as part of Plaintiff's initial DIB determination, Howard Leizer, Ph.D., conducted a review of Plaintiff's medical records. (R. 65). Dr. Leizer found Plaintiff has Dysthymia, ADHD, and alcohol abuse in remission. Id. Dr. Leizer concluded Plaintiff does not have any understanding and memory limitations. (R. 66). Dr. Leizer found Plaintiff did present with limitations in the areas of sustained concentration and persistence, including moderate limitations in her ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. When asked to explain his limitations in narrative form, Dr. Leizer stated:

> Claimant with depression, anxiety, ADHD, bipolar DO, and personality DO. She was hospitalized in May 2019, this was associated with mental health stabilization and substance abuse.    She completed ADLs and endorses difficulties or limitations with memory, concentration, completing tasks, understanding, and getting along with others.    She does have history of inappropriate sexual relationship with her sister's husband. She is maintained in outpatient treatment with medication.   Mental status exams are normal with clear thought processes, normal mood, good or moderate focus, normal memory.   She reports to objective source she still spends two days per month in bed due to depression.

Id. Dr. Leizer found Plaintiff has social limitations, including moderate limitations in her ability to interact appropriately with the public, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Id. Dr. Leizer stated Plaintiff does not have adaptation limitations. (R. 67).

Overall, Dr. Leizer found Plaintiff's "symptom-imposed limitations" are "partially consistent with other evidence," but the "severity of the symptoms and the alleged effect(s) on

function are not entirely consistent with the total medical and non-medical evidence, including statements by the claimant and others, observations regarding ADL's, and alterations of usual behavior or habits." (R. 65). Dr. Leizer noted "[s]ome symptoms appear to be disproportionate to the severity and duration that would be expected, based on the claimant's medically determinable impairment(s)." Id. Dr. Leizer reduced his opinion of Plaintiff's functional capacity accordingly, and provided the following explanation:

> Claimant alleges disability due to depression and anxiety. Claimant does have history of hospitalization for psych stabilization with alcohol abuse i[n] May 2019. She completed ADLs and endorses difficulties or limitations with memory, concentration, completing tasks, understanding, and getting along with others. Objective evidence provides acceptable diagnoses for depression, anxiety, ADHD, unspecified bipolar DO without psychotic features, unspecified personality DO, and alcohol Use DO. She does have history of inappropriate sexual relationship with her sister's husband. She reports she has not been involved in substance abuse treatment but has maintained sobriety for almost a year. She is maintained in outpatient treatment with medication. Mental status exams are normal with clear thought processes, normal mood, good or moderate focus, normal memory. She reports to objective source she still spends two days per month in bed due to depression. Claimant would reasonably have some moderate limitations due to her psych conditions, but could be expected to fulfill at least simple work demands with limited social interactions.

(R. 67) (emphasis added).

### b.   Richard Luck, Ph.D.

At the reconsideration level, Richard Luck, Ph.D. found that Plaintiff has moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace. (R. 74). Dr. Luck concluded Plaintiff is moderately limited in her ability to understand and remember detailed instructions. (R. 76). When considering sustained concentration and persistence limitations, Dr. Luck noted Plaintiff is moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without distracting them, and complete a normal

11

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods.  Id.  Dr. Luck found Plaintiff is not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without supervision, and make simple work-related decisions.  Id.  Dr. Luck noted Plaintiff has moderate social interaction limitations in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 77).  Dr. Luck explained that Plaintiff "is capable of asking simple questions and accepting instruction."  Id.  Dr. Luck concluded that Plaintiff has no adaptation limitations.  Id.  Dr. Luck then provided the following explanation:

> Claimant alleges disability due to depression and anxiety.  Claimant does have history of hospitalizations for psych stabilization with alcohol abuse i[n] May 2019. She completed ADLs and endorses difficulties or limitations with memory, concentration, completing tasks, understanding, and getting along with others. Objective evidence provides acceptable diagnoses for depression, anxiety, ADHD, unspecified bipolar DO without psychotic features, unspecified personality DO, and alcohol Use DO.  She does have history of inappropriate sexual relationship with her sister's husband.  She reports she has not been involved in substance abuse treatment but has maintained sobriety for almost a year.  She is maintained in outpatient treatment with medication.  Mental status exams are normal with clear thought processes, normal mood, good or moderate focus, normal memory.  She reports to objective source she still spends two day per month in bed due to depression.  Claimant would reasonably have some moderate limitations due to her psych conditions, but could be expected to <u>perform simple routine work activities</u>.

(R. 77) (emphasis added).

## C.    Testimony before the ALJ

The ALJ questioned Plaintiff at the hearing on January 11, 2022.  (R. 33).  The ALJ also heard testimony from the VE Carmine Abraham.  Id.

12

1.    **Plaintiff's Testimony**

On direct questioning by the ALJ, Plaintiff testified that she is married and has two children—ages ten and six. (R. 42). Plaintiff stated she lives in a house, has a driver's license, and can drive. Id. Plaintiff testified that she has her GED and is currently enrolled in class part-time and pursuing an associate degree. (R. 43).

Plaintiff testified that she has been unable to work since May, 2019 because of her depression and anxiety. (R. 46). She testified that her medication "is not working," and she has not found a medication that works. (R. 47). Plaintiff stated her "biggest" symptom related to her depression and anxiety is her inability "to get out of the bed" due to fatigue. Id. Plaintiff shared that she "sleep[s] for days at a time." Id. The ALJ asked Plaintiff how often she is unable to get out of bed, and she stated her episodes "last anywhere from two days to a full week," and she has had episodes last two weeks. Id. Plaintiff stated she has difficulty "talking on the phone" because of her anxiety, it is hard for her to be "around people," she has "very bad brain fog," and "[j]ust functioning on a day to day basis is very hard with depression." Id.

Plaintiff testified that her treatment consists of medication and counseling. (R. 48). She stated her current medications were Lexapro, Topamax, Adderall, and Xanax. Id. The ALJ then asked Plaintiff to clarify whether those medications are helping with her symptoms, and she stated "[t]hey help to a point," and she "feel[s] the best [she has] felt functioning-wise but" still does not "feel like [she] did before the depression. Id. Plaintiff testified that she believes her medication has caused weight gain and may be contributing to her brain fog. Id. Plaintiff then described her brain fog and said she forgets conversations "right after" they occur, and she is unable to "remember words, simple words for things." Id. She stated she is sometimes "just

13

slow," and "everything around just seems kind of cloudy."  Id.  She reiterated she is "slow, just like a snail," and that she has "to go slow because" she is "in a fog."  Id.

Plaintiff stated that on her "good days" she is able to "get some things done," including taking care of her dog, cats, and ferrets.  (R. 49).  Plaintiff testified that she is "fine" around her husband and children but being around her "grandparents and sister is hard" and family gatherings are "definitely difficult."  (R. 50).  Plaintiff stated her husband usually does the household errands, like grocery shopping.  Id.  Plaintiff testified that when she is "feeling up to it," she will take her kids to appointments or attend family events outside of her home.  Id.  Plaintiff stated that she tries to go on walks with her family and children for fun, but she has "a hard time."  Id.  Plaintiff noted she is not a member of any community organizations and does not do volunteer work.  Id.

## 2.    Testimony from the VE

The VE "grouped together" Plaintiff's past work and provided DOT classifications.  (R. 52).  The VE first classified Plaintiff's work at the Taphouse (2015–2016) and JW Walker's (2019) as a Waitress (DOT 311.477-030), with a light exertional level and SVP of 3 as performed.  (R. 53).  The VE classified Plaintiff's employment at Streats (2017–2019) and City Café (2009–2010) as a composite position–Waitress (DOT 311.477-030) and Cook (DOT 315.361-010).  (R. 54).  The VE classified Plaintiff's work as a Cook (DOT 315-361-010) for several different employers.  Id.  The VE classified Plaintiff's job at Bayview Veterinarian (2012) as a Vet Assistant (DOT 079.361-014).  The VE classified Plaintiff's work at the Peninsula Society (2011–2012) as an Animal Care Worker (DOT 410.674-010).  (R. 54–55).  The VE finally classified Plaintiff's work at Taco Bell (2009) as a Fast Food Worker (DOT

311.472-010), and her employment at Snelber's (2008–2009) as Pizza Maker (DOT 313.381-014). (R. 55). The ALJ then posed a hypothetical to the VE:

> [A]ssume that we have an individual who is the same age, with the same education and work experience as the Claimant. Assume that this individual does not have any specific exertional limitations. The individual can perform jobs that would take no more than 30 days of training to learn, with a Special Vocational Preparation level of 2, which are generally classified as unskilled. This individual can understand, remember, and carry out simple instructions; can perform simple and routine tasks; can perform jobs that would be considered low stress, and that they would involve only occasional simple decision making, and only occasional gradual changes in the work duties and work setting. The individual can have occasional interaction with coworkers and supervisors, and can perform jobs in which she would have no more than rare or incidental contact with customers or members of the general public.

(R. 55). The VE testified that this hypothetical individual could not perform any of Plaintiff's past work. (R. 56). However, the hypothetical individual could perform other jobs in the national economy that are unskilled. Id. The VE testified this person could work as a Hand Packager (DOT 920.587-018), with 174,000 jobs in the national economy, Laundry Worker (DOT 361.685-018), with 213,000 jobs in the national economy, and Order Filler (DOT 922.687-058), with 350,000 jobs in the national economy. Id. The ALJ then posed a second hypothetical:

> [I]n addition to the limitations from the first hypothetical … let's assume that the individual in question would be off-task at least 20% of the work day. Now, this individual would be late to work, absent from work, or would need to leave early from work at least two days per month on an unscheduled and unplanned basis.

Id. The VE testified that this hypothetical person could not perform any jobs in the national economy. (R. 57).

## III.    STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and

whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  ANALYSIS

Plaintiff's brief identifies two errors in the ALJ's decision that she claims warrants remand.  Plaintiff contends that the ALJ erred because he did not include limits on pace in the RFC despite finding a moderate impairment in concentration, persistence, or pace ("CPP"), and he did not explain why he excluded a pace limitation.  Pl.'s Br. (ECF No. 14, at 6–9).  Plaintiff also argues the ALJ erred by relying upon a purported lack of objective evidence to discredit her

symptoms and functional limitations.   Id. at 9–10.   For the reasons discussed below, I recommend the Court AFFIRM the Commissioner's decision.

A.   **Framework for SSA Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d).   As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a).

An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.   See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).   SSA regulations set out a sequential analysis which ALJs use to make their determination.   20 C.F.R. § 404.1520(a)(4).   Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

17

5.      Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled.   An affirmative answer to questions three or five establishes disability.  The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(3); 404.1520b.  This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age."  Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)).  Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 18).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder (GAD), major depressive disorder (MDD), personality disorder, and alcohol use disorder.  Id.  At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments.  Id.

18

The ALJ then found that Plaintiff had moderate limitations in (1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself.  (R. 18–20).  The ALJ applied the following restrictions in Plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform jobs that would take no more than 30 days of training to learn, with a specific vocational (SVP) level of two (2), which are generally classified as unskilled.  The claimant can understand, remember, and carry out simple instructions.  She can perform simple and routine tasks.  She can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.  She can have occasional interaction with coworkers and supervisors.  She can perform jobs in which she would have no more than rare or incidental contact with customers or members of the general public.

(R. 20).  At step four, the ALJ concluded Plaintiff is unable to perform any past relevant work.  (R. 25).  At step five, the ALJ found work in the national economy Plaintiff could perform and therefore found that she was not disabled.  (R. 26–27).

## C.    The ALJ Provided an Adequate RFC and Explanation

Plaintiff alleges that the ALJ erred in crafting the RFC because he found a moderate impairment in concentrating, persisting, or maintaining pace ("CPP"), but failed to include a limit on pace in the RFC.  Pl.'s Br. (ECF No. 14, at 4–9).  Plaintiff contends that the RFC limitations to unskilled work, and simple, routine tasks, are inadequate to account for her moderate impairment in CPP and contravene the Fourth Circuit's decision in Mascio.  Id. at 6; 780 F.3d at 638.  Plaintiff adds that the ALJ provided no explanation for why he did not include limits on pace.  Id.  In response, the Commissioner argues that "the ALJ adequately explained how the residual functional capacity finding accounted for Plaintiff's mental limitations."  Def.'s Br. (ECF No. 15, at 13).  For the reasons explained below, I agree with the Commissioner.

19

The ALJ's finding of moderate limitations in CPP does not mean that he found Plaintiff was moderately limited in concentrating, persisting, and maintaining pace. The ALJ's finding merely means that Plaintiff was moderately limited in at least one of these areas. See Lockett v. Saul, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one* of those areas, not necessarily all three."); 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(3)(f) ("We will document the rating of limitation of the whole area of mental functioning, not each individual part ... For example ... if you have marked limitation in maintaining pace, and mild or moderate limitations in concentrating and persisting, we will find that you have marked limitation in the whole paragraph B3 area of mental functioning."). Plaintiff "cannot show a need for pace-specific restrictions in [her] residual functional capacity simply because of the 'moderate' designation; [she] must have evidence of that need." Lockett, 843 App'x at 239. Plaintiff further argues that the Fourth Circuit in Mascio established that "when an ALJ finds 'moderate' impairment in CPP, the RFC must include limits on pace. A limitation to simple, routine, repetitive, or unskilled skills does not suffice." Pl's Br. (ECF No. 14, at 6) (citing 780 F.3d at 638). However, the Fourth Circuit has "not impose[d] a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). The ALJ need only "explain why a claimant's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC." Id. (cleaned up); see also Sizemore v. Berryhill, 878 F.3d 72 (finding that the ALJ properly explained why a pace limitation was not included in the RFC, despite including a moderate limitation in concentration, persistence, or

pace).  As demonstrated below, the ALJ discussed the basis for the RFC in detail, and his discussion explains why Plaintiff would not require limitation specifically directed to pace.

Here, the ALJ's discussion illustrates that the moderate CPP limitation was not based on pace, as he explicitly relied on Plaintiff's "reported problems with concentration and completing tasks." (R. 19).  Specifically, when explaining the RFC limitations imposed, the ALJ explained:

> [C]laimant reported problems <u>with concentration and completing tasks</u>.  The claimant testified that she is taking some college classes part-time, working towards an Associate Degree.  Her treatment records note that she is "working on finishing her x-ray tech degree" (14F/p. 4).  The claimant reported that she drives, shops by phone/by computer and she is able to go out alone (5F/p. 4).  The mental health treatment records generally note good focus (9F) and normal attention (14F) longitudinally on exam (with a few intermittent notes of "distractable" attention).  Both the State agency psychological consultants concluded that claimant has moderate limitation in concentrating, persisting, or maintaining pace (2A/p. 5 and 4A/p. 5).  The <u>totality of the evidence</u> demonstrates that the claimant has <u>moderate limitation</u> with regard to concentration, persistence, <u>or</u> pace.

(R. 19) (emphasis added).  The ALJ also found PA-C Cooke's medical source statement—which supported a limitation in pace—unpersuasive and inconsistent "with the evidence when considered in totality." (R. 24).  The ALJ found "no persuasive explanation offered on the face of" PA-C Cooke's two medical source statements, "nor is any explanation for such limitations apparent in [PA-C Cooke's] actual treatment records, and so these opinions are not well supported." <u>Id.</u>  The ALJ noted that PA-C Cooke's statements were "inconsistent with the opinions from other providers (the State agency psychological consultants, who are both doctors), and … inconsistent with the longitudinal mental status examination findings." <u>Id.</u>

The ALJ found the opinions of Dr. Leizer and Dr. Luck "generally persuasive." (R. 24).  Although both doctors determined Plaintiff has a "moderate limitation in concentrating/persisting/maintaining pace," they also both concluded that Plaintiff could "fulfill at least simple work demands with limited social interactions." <u>Id.</u> (citing R. 67, 77).  The ALJ

21

explained that Dr. Leizer's assessment was "supported with well-reasoned explanation, and is consistent with the evidence as a whole, including the longitudinal[8] mental status examination findings [], and the claimant's activities of daily living including taking college courses." Id. The ALJ found Dr. Leizer's opinion "generally consistent with the claimant's course of treatment (including no further inpatient admissions) and with the mental assessment by the State agency psychological consultant at reconsideration." Id. Similarly, the ALJ was "generally" persuaded by Dr. Luck's opinion, but added an additional limitation—a moderate degree of impairment in Plaintiff's ability to adapt and manage herself in light of her "reported attempts to overdose, risky sexual behavior, etc." Id.

Although the ALJ found Plaintiff moderately limited in CPP at step 2, he sufficiently explained why that determination does not "translate into" a specific pace limitation in the RFC. Shinaberry, 952 F.3d at 121. Plaintiff cites a significant number of cases where the court found for other plaintiffs against the Commissioner. Without addressing each case, this Report concludes that they are distinguishable. For example, the Court in Mascio granted remand "because the ALJ [t]here gave no explanation" for ignoring the plaintiff's moderate limitations in CPP. 780 F.3d at 633, 638. This court likewise found that the ALJ's explanation was inadequate in Courtney L. v. Saul because the ALJ recognized ongoing issues in CPP (including pace) but instead based his conclusions on a few positive observations pulled from examination. 2021 WL 2046712, at *10 (E.D. Va. May 5, 2021). Here, the ALJ did not find Plaintiff specifically limited in pace, nor did he fail to address the evidence unfavorable to his decision. See (R. 20–24). The ALJ specifically accounted for potential ongoing issues in the RFC despite

---

[8] The ALJ's RFC assessment including the following discussion of Plaintiff's longitudinal mental status examinations: "Longitudinally, the claimant's inpatient admission was May 10 to May 15, 2019. Noted diagnoses included Major Depressive Disorder, Bipolar Disorder, Suicidal Ideation, and Alcohol Dependence. Her discharge diagnosis was unspecified bipolar disorder without psychotic features." (R. 22).

finding Plaintiff "has remained rather stable since discharge" from inpatient care in 2019.  (R. 21).  He conducted a detailed review of her mental health status since maintaining sobriety, before concluding "the medical evidence as a whole simply fails to support work-preclusive mental limitations longitudinally, and generally demonstrates the ability to function within [her RFC]."  (R. 23) (citing R. 488, 491, 492, 516, 518, 519, 520).  His explanation of the reasons why those limitations were imposed is sufficient to permit judicial review.  See Owens v. Kijakazi, 2021 WL 2344224, at *3 (4th Cir. Mar. 3, 2023).

**D.     The ALJ Did Not Rely Upon a Purported Lack of Objective Evidence to Discredit Plaintiff's Symptoms and Functional Limitations**

Plaintiff also argues the ALJ erred by relying upon a purported lack of objective evidence to discredit her symptoms and functional limitations caused by her severe mental impairments.  Pl.'s Br. (ECF No. 14, at 9).  In support of her argument, Plaintiff relies on Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341 (4th Cir. 2023); Pl.'s Br. (ECF No. 14, at 9–10).  However, as highlighted by the Commissioner, Shelley C. is distinguishable.  In Shelley C., "[t]he ALJ's legal error [was] clear: he could not dismiss Shelley C.'s subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence."  61 F.4th 341, 360.  The Fourth Circuit held that chronic depression, like fibromyalgia as described in Arakas,[9] often does not produce objective medical evidence that can be observed in a typical laboratory test, and thus an ALJ considering these claims cannot require that the claimant's "subjective statements be validated by objective medical support."  Id. at 362.  In sum, the ALJ has to balance the entire record, and cannot disregard a claimant's subjective complaints "solely

---

[9] Arakas v. Comm'r of Soc. Sec. establishes the appropriate legal standard for evaluating fibromyalgia claims. 983 F.3d 83, 97-98 (4th Cir. 2020). Specifically, the Fourth Circuit explained that an ALJ cannot "rely on objective medical evidence (or the lack thereof—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." Id. at 97. Two years later, in Shelley C., the Fourth Circuit held that chronic depression claims should be evaluated under the same framework as fibromyalgia claims, and thus an ALJ cannot rely on a lack of objective medical evidence to discount the claimant's subjective complaints. 61 F.4th at 360.

because the objective medical evidence does not substantiate the degree of impairment-related symptoms." Id. at 360.

Here, the ALJ properly summarized the objective evidence including the detailed record of Plaintiff's self-report of her condition during an extensive course of treatment. (R. 23). The ALJ did not suggest (or require) that Plaintiff's alleged symptoms must be validated by objective support. To the contrary, the ALJ compared Plaintiff's testimonial "statements concerning the intensity, persistence, and limiting effects of these symptoms" with "the medical evidence and other evidence in the record," and found inconsistencies. (R. 21). The ALJ relied on Plaintiff's own subjective reports to her treatment providers in August 2020, November 2020, January 2021, February 2021, April 2021, July 2021, and September 2021 that she was doing well mentally. (R. 21–23). To account for her "reported attempts to overdose, risky sexual behavior, etc." the ALJ imposed greater limitations than Dr. Luck and found Plaintiff moderately limited in her ability to adapt and manage herself. (R. 24). The ALJ credited Plaintiff's subjective complaints by limiting her to jobs that are considered "low stress" and involve "occasional interaction with co-workers and supervisors," and "no more than rare or incidental contact with customers or members of the general public." (R. 20). The ALJ's analysis comports with law, and substantial evidence supports the RFC.

While Plaintiff disagrees with how the ALJ evaluated this evidence, weighing conflicting evidence is the ALJ's role, not a reviewing court. See. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]").

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 13), and Grant the Commissioner's request, (ECF No. 15), to AFFIRM the final decision of the Commissioner.

## VI.    **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

December 4, 2023